Timothy K. Conde (10118)
timothy.conde@stoel.com
Michael R. Menssen (15424)
michael.menssen@stoel.com
STOEL RIVES LLP
201 S. Main Street, Suite 1100
Salt Lake City, UT  84111
Telephone:  (801) 328-3131

*Attorneys for Plaintiffs Ultradent Products, Inc.
and Oratech, LLC*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ULTRADENT PRODUCTS, INC., a Utah corporation; ORATECH, LLC, a Nevada limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>SPECTRUM SOLUTIONS LLC, a Utah limited liability company; NEIL J. JOHNSON, an individual; DERRICK CHRISTMAN, an individual<br><br>Defendants. | Case No. 2:17-cv-00890-JNP-DBP<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**<br><br>Judge Jill N. Parrish |

Plaintiffs Ultradent Products, Inc. ("Ultradent") and Oratech, LLC ("Oratech") (collectively, the "Ultradent Parties") hereby respond to defendant Spectrum Solutions, LLC's ("Spectrum") motion to dismiss (Dkt. 13) and to defendant Neil J. Johnson's ("Mr. Johnson") motion to dismiss (Dkt. 18).

## I.    INTRODUCTION

The Ultradent Parties bring this lawsuit to recover for breach of contract, breach of the implied covenant and good faith and fair dealing, and trade secret misappropriation.  The facts

for all of these claims are related.  In 2012, Oratech (a wholly-owned subsidiary of Ultradent) entered into a manufacturing agreement with Spectrum pursuant to which Oratech agreed to manufacture DNA test kits for Spectrum.  A supplement to this agreement was entered into in 2015 that, among other things, extended the "initial term" of the manufacturing agreement through September 2017.  Under this agreement, the parties recognized that Oratech invested considerable time, resources, and efforts to build a production line capable of manufacturing the DNA test kits.  The agreement ensured that Oratech would receive the fruits of its efforts by requiring Spectrum to either have the DNA test kits manufactured by Oratech or pay Oratech a royalty for each DNA test kit manufactured by some other source.

In 2017, Spectrum informed Oratech that it intended to end the agreement.[1]  Spectrum announced that it intended to manufacture the DNA test kits *itself* and that, contrary to the terms of the agreement, it would not pay Oratech royalties for DNA test kits Spectrum manufactures itself.  To shorten the typical investment time that would be required to develop the capability to manufacture DNA test kits, Spectrum hired Mr. Johnson, a former Manager of Production for Ultradent who possesses the Ultradent Parties' trade secret information about the manufacturing process for the DNA test kits.  Mr. Johnson wrongfully disclosed, and Spectrum wrongfully acquired and used, trade secrets belonging to Ultradent in order to quickly manufacture the DNA test kits that Oratech had been manufacturing.

---

[1] To avoid automatic renewal of the manufacturing agreement, the agreement requires that the non-renewing party give the other party written notice no less than 90 days before the date of expiration of the agreement.  Otherwise the agreement automatically renews.  The Ultradent Parties contend that Spectrum did not comply with this notice provision, and therefore, the agreement has automatically renewed in accordance with the automatic renewal provision.

Both Spectrum and Mr. Johnson are seeking dismissal of the Federal Defend Trade Secrets Act ("DTSA") cause of action. They argue that this single cause of action should be dismissed for two reasons: first, the complaint fails to allege any misappropriation occurring after the effective date of the DTSA; and second, the complaint fails to sufficiently allege that Spectrum or Mr. Johnson misappropriated any of the Ultradent Parties' trade secrets. Defendants are mistaken on both counts. Defendants' motions should be denied.

First, the DTSA applies so long as there is a single trade secret allegation that occurred after the effective date, even if there was some conduct that occurred before it. The Ultradent Parties sufficiently allege that misappropriation occurred after the effective date of the DTSA, which was May 11, 2016. Indeed, *all* of the principal conduct that gives rise to this lawsuit occurred in 2017, including those allegations related to the trade secret claims.

Second, the Ultradent Parties sufficiently allege that Spectrum and Mr. Johnson misappropriated the Ultradent Parties' trade secrets. At the pleading stage, it is enough for a plaintiff to rely on circumstantial evidence and plead upon information and belief. Here, the Ultradent Parties' factual allegations are sufficient to establish that Spectrum has, in short order, configured a facility to manufacture DNA test kits and compete with the Ultradent Parties. At the very least, Spectrum's speedy conversion to a manufacturer while employing Mr. Johnson— a former Manager of Production for Ultradent who oversaw Oratech's assembly and manufacture of the DNA test kits—infers that Mr. Johnson has disclosed and Spectrum has used the Ultradent Parties' trade secrets to shortcut the considerable investment in time and resources required to manufacture DNA test kits. The Ultradent Parties' allegations are more than sufficient to survive a motion to dismiss.

## II. RELEVANT FACTUAL ALLEGATIONS SET FORTH IN COMPLAINT

1. In 2012, Oratech and Spectrum entered into an agreement to have Oratech manufacture DNA test kits for Spectrum. (Compl. ¶¶ 10, 16.)

2. It took considerable time, resources, and effort for Oratech to be able to manufacture DNA test kits. (Compl. ¶ 11.)

3. While working for Ultradent, Mr. Johnson was the Manager of Production overseeing the assembly and manufacture of the DNA test kits. He was heavily involved with the creation of the work instructions and set up processes and implementation for the manufacture of the DNA test kits. (Compl. ¶ 34.)

4. Oratech and Spectrum entered into a Commercialization Supplement to the Manufacturing Agreement (the "Supplement") which, among other things, resulted in an extension of the initial term of the manufacturing agreement through September 24, 2017. (Compl. ¶¶ 14-15.)

5. Mr. Johnson's employment with Ultradent was terminated on November 2, 2015. (Compl. ¶¶ 33.)

6. During the first half of 2017, the parties discussed the need to move the production line to another Oratech facility as well as the future of the manufacturing agreement (Compl. ¶¶ 23-25.)

7. During one such meeting in April 2017, the parties discussed Oratech's need for direction from Spectrum regarding the future of their relationship. Spectrum presented three potential options, two of which involved renewing the contract, with a third option being a month-to-month contract. (Compl. ¶ 25.)

8. On June 29, 2017 (after the 90-day notice for non-renewal period had expired), Spectrum sent Oratech an email stating "our contract is nearing an end." (Compl. ¶ 28.)

9. In a July 2017 meeting between Oratech and Spectrum, Spectrum announced its intention to manufacture the DNA test kits itself. (Compl. ¶ 31.)

10. Spectrum informed Oratech of its position that it will not pay Oratech royalties for DNA test kits it manufactures itself. (Compl. ¶ 44.)

11. The Ultradent Parties own confidential, proprietary, technical, and business information, including but not limited to unique and innovative improvements for injection molding tools, zero draft molding, and other related processes, which information constitutes trade secrets. (Compl. ¶ 67.)

12. Mr. Johnson has consulted or been employed by Spectrum and has disclosed Ultradent's trade secrets to Spectrum. (Compl. ¶¶ 64, 69.)

13. Spectrum also acquired Ultradent's trade secrets while visiting Ultradent's facilities to monitor the manufacture of the DNA test kits. (Compl. ¶ 70.)

14. To manufacture DNA test kits itself, Spectrum is using or threatening to use the trade secrets it acquired from Ultradent to operate a manufacturing facility to compete with the Ultradent Parties. (Compl. ¶ 71.)

### III. ARGUMENT

In reviewing a motion to dismiss, the pleadings must be liberally construed and courts must accept the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *See, e.g., Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016); *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002). A complaint may "contain either direct *or inferential allegations* respecting all the material elements necessary to sustain a recovery under

some viable legal theory." *Glover v. Mabrey*, 384 F. App'x 763, 768 (10th Cir. 2010) (emphasis added). When viewed in this light, the complaint easily sets forth facts sufficient to state a claim under the DTSA.

### A. The Ultradent Parties Sufficiently Allege that the Misappropriation Occurred After May 11, 2016.

Defendants argue that the Ultradent Parties' cause of action based on the DTSA should be dismissed for failing to allege misappropriation after May 11, 2016. Defendants are correct that the effective date of the DTSA is May 11, 2016. Defendants are wrong, however, that the Ultradent Parties do not adequately allege misappropriation after that date.

The allegations related to the DTSA claim occur principally in 2017. In March 2017, the parties first discussed the potential end of the initial term of the manufacturing agreement, and in July 2017, Spectrum announced its intention to manufacture the DNA test kits itself. *See* Compl. ¶¶ 24, 28, 31. It took considerable time—approximately two years—resources, and effort for Oratech to be able to manufacture DNA test kits, yet Spectrum was preparing to do it in less than six months. *See id.* ¶ 11. It was during this time period when Spectrum was preparing to manufacture DNA test kits itself that the Complaint alleges Mr. Johnson was consulting for Spectrum and disclosing Ultradent's trade secrets to assist Spectrum's attempt to set up a manufacturing facility. *See id.* ¶¶ 23-31. While the Complaint may not always directly state that this conduct occurred in 2017, when read as a whole, it is clear that all of the principal allegations occurred in 2017. The Ultradent Parties have thus alleged misappropriation after the effective date of the DTSA.

In addition, the Ultradent Parties only need to allege one act of misappropriation after the effective date of the DTSA. Courts have held that any allegation of "disclosure or use" that

occurs after the DTSA went into effect is sufficient to state a claim, even if there was some conduct that occurred before the effective date. For example, in *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc*., the lawsuit commenced in 2015 (before the DTSA went into effect), and the plaintiffs then sought leave to amend their complaint to add a new claim under the DTSA once it went into effect. No. 15-CV-211, 2016 WL 5338550, at *2-3 (S.D.N.Y. Sept. 23, 2016). The defendants opposed the addition of a claim under the DTSA, arguing that the "DTSA applies only to acts of misappropriation that occur on or after the date of the enactment of this Act," and the amendment alleged pre-enactment conduct. *Id*. at *6. Nevertheless, the court allowed the amendment, explaining that the plain language of the DTSA defines misappropriation to include "disclosure *or use* of a trade secret without the consent of another," and since the defendants alleged that the plaintiffs continued to use the trade secret, the wrongful act continued to occur after the date of the DTSA. *Id*. (citing 18 U.S.C. § 1839(5) (emphasis in original)). Thus, the complaint was sufficient as long as the proposed amendment alleged some wrongful acts occurred after the effective date of the DTSA.

Other courts have reached the same conclusion. In *Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp.*, the defendants filed a motion to dismiss a DTSA claim arguing that the DTSA was enacted after the allegedly unlawful acts took place. No. CV 16-2499, 2017 WL 1105648, at *3 (E.D. Pa. Mar. 24, 2017). The court rejected this argument, noting that, unlike many states' Uniform Trade Secret Act, the DTSA does *not* contain a provision stating that it does not apply to a continuing misappropriation that occurs after the effective date. *Id.* Relying on cases from several other jurisdictions, the court agreed that "the DTSA applies to misappropriations that began prior to the DTSA's enactment if the misappropriation continues to occur after the enactment date." *Id*. (citing *Adams Arms, LLC v.*

*Unified Weapon Sys., Inc.*, 16–cv–1503, 2016 WL 5391394, at *5–7 (M.D. Fla. Sept. 27, 2016) (finding viable a continuing misappropriation claim that began pre-enactment because the complaint alleged that the defendants continued to use the trade secrets after the DTSA was enacted); *Allstate Ins. Co. v. Rote*, 16–cv–1432, 2016 WL 4191015, at *1–5 (D. Or. Aug. 7, 2016) (granting preliminary injunction in DTSA case where the defendant left her job before the DTSA was enacted but remained in possession of alleged trade secrets after the DTSA's enactment); *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1076–78 (N.D. Cal. 2016) (same with temporary restraining order)).

Thus, even if some of the alleged misconduct related to the trade secret claim had occurred before May 2016 (which the Ultradent Parties have not alleged), the claim would remain valid because Mr. Johnson's disclosure of the Ultradent Parties' trade secrets and Spectrum's use of the same was occurring in July 2017 when Spectrum informed the Ultradent Parties that Spectrum was preparing to manufacture the DNA test kits itself. Defendants' argument that the Ultradent Parties do not allege any misconduct after the effective date of the DTSA is without merit.

**B.       The Ultradent Parties Sufficiently State a Claim for Misappropriation Against Spectrum and Mr. Johnson.**

Defendants also argue that the Ultradent Parties have not set forth sufficient factual allegations for the misappropriation element of a DTSA claim. Defendants are wrong.

Under the DTSA, the definition of misappropriation includes "acquisition of a trade secret" by a person who knows the trade secret was acquired by "improper means" and "disclosure or use of a trade secret" without consent by a person who knew that the trade secret was acquired under circumstances to maintain the secrecy of the trade secret or derived from a

person who owed a duty to maintain the secrecy of the trade secret. 18 U.S.C. § 1839(5). Moreover, the DTSA allows an action to be brought "to prevent any actual *or threatened* misappropriation." 18 U.S.C. § 1836 (emphasis added).

At the pleading stage, the Ultradent Parties are permitted to make allegations relying on circumstantial evidence and based upon information and belief. This is especially true in trade secret cases. Courts have recognized that plaintiffs "can rarely prove misappropriation by convincing direct evidence" and that "in most cases, plaintiffs must construct a web of perhaps ambiguous circumstantial evidence . . . ." *Joshua David Mellberg, LLC v. Will*, No. CV-14-02025, 2016 WL 4592181, at *14 (D. Ariz. Jan. 22, 2016), report and recommendation adopted, No. CV-14-02025, 2016 WL 944958 (D. Ariz. Mar. 14, 2016). Likewise, the "*Twombly* plausibility standard . . . does not prevent a plaintiff from 'pleading facts alleged on information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Cassidy v. Teaching Co., LLC*, No. 2:13-CV-884, 2014 WL 1599518, at *3 (S.D. Ohio, Apr. 21, 2014) (quoting *Arista Records, LLC v. Does 3*, 604 F.3d 110, 120 (2d Cir. 2010)).[2]

On these standards, the Ultradent Parties have more than adequately alleged "actual or threatened" misappropriation. As alleged in the Complaint, Oratech and Spectrum entered into an agreement in 2012 to have Oratech manufacture DNA test kits for Spectrum. *See* Compl. ¶¶ 10, 16. A Supplement to this manufacturing agreement was entered into that, among other

---

[2] *See also Amtote Int'l, Inc. v. Kentucky Downs, LLC*, No. 1:15-CV-00047-GNS, 2016 WL 1270262, at *6 (W.D. Ky. Mar. 31, 2016) (explaining that allegations made on "information and belief" and evidence that "is circumstantial" can create a reasonable inference of misappropriation and can be sufficient to survive a motion to dismiss).

things, resulted in an extension of the initial term of the manufacturing agreement through September 24, 2017. *See id.* ¶¶ 14-15. It took around two years and significant resources for Oratech to be able to manufacture DNA test kits. *See id.* ¶ 11. Ultradent owns trade secret information that was used in the manufacture of the DNA test kits, including but not limited to unique and innovative improvements for injection molding tools, zero draft molding, and other related processes. *See id.* ¶ 67. Mr. Johnson had knowledge of this trade secret information and was heavily involved with the creation of the work instructions and set up processes and implementation for the manufacture of the DNA test kits, and his employment was terminated in November 2015. *See id.* ¶¶ 33-34. In June 2017, Spectrum sent Oratech an email stating "our contract is nearing an end." *See id.* ¶ 28. In July 2017, Spectrum told Oratech of its intention to manufacture the DNA test kits itself and Spectrum is now setting up a facility to manufacture DNA test kits in order to compete with Ultradent. *See id.* ¶¶ 31, 71. Mr. Johnson has either been employed by Spectrum or is consulting for it and has disclosed Ultradent's trade secrets to Spectrum. *See id.* ¶¶ 64, 69.

The Ultradent Parties have thus alleged facts showing that it takes considerable time, effort, and resources began manufacturing DNA test kits, and that Spectrum has used the Ultradent Parties' trade secrets in Spectrum's manufacturing process. The fact that Spectrum attempted to end its manufacturing agreement with Oratech effective September 2017 and then announced its intention to manufacture the DNA kits itself, leads to the reasonable inference that Spectrum has developed very quickly the capability to manufacture the DNA test kits. It is apparent that to do so, Spectrum has hired Mr. Johnson, a former Ultradent employee who possesses trade secret information about the manufacturing process for the DNA test kits. Based upon this circumstantial evidence, it is a reasonable inference that Spectrum has acquired and is

using (or threatening to use) the Ultradent Parties' trade secret information in order to develop quickly the capability to manufacture DNA test kits. Those allegations make an inference of culpability more than plausible.

Courts have found allegations of misappropriation to be sufficient in similar cases. For example, in *Creative Snacks, Co., LLC v. Hello Delicious Brands LLC*, Creative Snacks had a supply agreement to sell its product to Hello Delicious for the sole purpose of resale to Costco. No. 1:17CV50, 2017 WL 4043564, at *2 (M.D.N.C. Sept. 12, 2017). Creative Snacks gave written notice to Hello Delicious of the termination of the supply agreement, and three months later, Hello Delicious informed Costco that it would continue to supply Costco with an identical (or similar) product. *Id.* Creative Snacks brought a lawsuit alleging trade secret misappropriation, and Hello Delicious moved to dismiss it, arguing that Creative Snacks "failed to allege sufficiently how the trade secrets were misappropriated." *Id.* at *10. Hello Delicious noted the use of "upon information and belief" in the allegations and argued that Creative Snacks had "not alleged any concrete facts indicating that defendants have developed a snack food item similar to the Product—much less that they have used plaintiff's confidential information to do so." *Id.* The court rejected this argument, finding the allegation that "without Defendants' knowledge of Creative Snacks' trade secrets, they would not have been able to make this representation to Costco" that it would continue to supply it with a similar product was sufficient to properly allege misappropriation. *Id.* In reaching this holding, the court recognized that "misappropriation of trade secrets can be proved by circumstantial evidence." *Id.*

*Creative Snacks* has important similarities to this case. As in *Creative Snacks*, the Ultradent Parties provided products to Spectrum under an agreement, and then once the agreement was ending, Spectrum announced its intention to manufacture the products itself.

Spectrum could not fulfill its stated intention to manufacture the DNA test kits itself in such a short timeframe without knowledge of and use of the Ultradent Parties' trade secrets. This is the exact type of circumstantial evidence the court found sufficient in *Creative Snacks* to allege misappropriation, and it is likewise sufficient here.

The *Veronica Foods Co. v. Ecklin* case Defendants cite is distinguishable. No. 16-CV-07223-JCS, 2017 WL 2806706 (N.D. Cal. June 29, 2017). In that case, the plaintiff alleged that a former employee had taken trade secrets such as customer lists and then went to work for a competitor who deliberately solicited business from the plaintiff's customers. *Id*. at *2-3. The court found that the plaintiff did not plausibly allege that the defendants used the trade secrets, explaining that "the mere fact that the [competitor] began selling oil and vinegar to stores previously supplied by Veronica Foods is to be expected from a new wholesaler entering the market" and plaintiff must allege facts that "tend to exclude an innocent explanation." *Id* at *14.

Here, in contrast, the Ultradent Parties have alleged facts that tend to exclude an innocent explanation. Spectrum announced that it would manufacture the DNA test kits itself and attempted to cancel the manufacturing agreement effective September 2017. In order to manufacture DNA test kits without having to invest the considerable time and resources normally needed to develop and implement the manufacturing process, Spectrum hired Mr. Johnson and used the Ultradent Parties' trade secrets to speed up the process. The allegations here are therefore like *Creative Snacks* and not like *Veronica Foods*. The Ultradent Parties have alleged sufficient facts to state a claim for misappropriation of trade secrets by Spectrum and Mr. Johnson.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motions to Dismiss.[3]

DATED: October 17, 2017.

STOEL RIVES LLP

*/s/ Timothy K. Conde*
Timothy K. Conde
Michael R. Menssen

*Attorneys for Plaintiffs Ultradent Products, Inc. and Oratech, LLC*

---

[3] Defendants also argue that if the Court dismisses the DTSA claim, the court will then lack subject matter jurisdiction. Defendants misstate the law. Under 28 U.S.C. § 1367(c), a court "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction," but such dismissal is not mandatory. This Court has the discretion to retain jurisdiction. *See Wittner v. Banner Health*, 720 F.3d 770 (10th Cir. 2013) (explaining that "it is within a district court's discretion to dismiss supplemental state law claims once it has dismissed the federal question claim," but that "the court should consider retaining state claims when 'given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction'").